

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

PD-1879-06

MARIA DEL CARMEN HERNANDEZ, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 04-05-00634-CR of the
Fourth Court of Appeals,
Bexar County

*WOMACK, J., delivered the opinion for a unanimous Court.*

The trial court admitted into evidence a co-defendant's testimonial statement for the purpose of impeaching another out-of-court statement of that co-defendant. We hold that this did not violate the Confrontation Clause of the Sixth Amendment under *Crawford v. Washington*.[1]

---

[1] 541 U.S. 36 (2004).

## Facts and Procedural History

The appellant was convicted in September 2005 of capital murder committed in the course of a kidnapping.[2] Punishment was fixed at life in prison.[3] The Fourth Court of Appeals affirmed the conviction.[4]

The appellant met her co-defendants, Cassandra Leffew and Dolores Rodriguez, at the Bexar County Battered Women's Shelter. After leaving the shelter, the appellant, her children, and Leffew moved in together. Leffew made the statement that is at issue in this case.

The victim of the murder was Robert Fernandez, the father of the appellant's youngest son. He also had moved into the apartment. By July 2004, Leffew, her four children, the appellant, her three children, and the victim all shared the apartment.

On July 24, 2004, the appellant and the victim took all of the children to the community swimming pool. The victim took Leffew's daughter and his son back to the apartment. Leffew believed that the victim had assaulted her daughter at the pool, claiming that she had a boot-shaped bruise on her back. She also claimed that the victim must have sexually assaulted the girl because she looked "fearful." The victim repeatedly denied injuring the child in any way. The appellant refused to believe Leffew's accusations, and she urged Leffew to take her daughter to be examined. Leffew did not take the child for medical treatment.

The same group spent the next evening together at Dolores Rodriguez's house. Leffew drugged the victim with alcohol secretly mixed with prescription drugs. She hoped that he

---

[2] See PENAL CODE § 19.03(a)(2).

[3] "If the defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment without parole." CODE CRIM. PROC. art. 37.071, § 1.

[4] 219 S.W.3d 6 (Tex. App. – San Antonio 2006).

"would confess," but he maintained his innocence. Eventually he passed out. The appellant claims that she argued with Leffew about drugging the victim further, and Leffew ordered her to stay in another room. Leffew later poured a mixture of crushed pills and water into the victim's mouth, and he remained unconscious. The victim's hands and feet were tied together, and he was placed in the trunk of Leffew's car. The appellant, Leffew, and Rodriguez left the house and drove around for awhile. Eventually, the appellant and Rodriguez dropped off Leffew at her apartment and went to Rodriguez's home, with the victim still in the trunk. According to the appellant's testimony at trial, Rodriguez told her to smother the victim with a trash bag. After the appellant refused, Rodriguez put the bag over him herself. When he fought back, the appellant claimed that she tried to help him but was pushed away. Then Rodriguez strangled him with a pair of pantyhose, put his body in the trunk, and drove away. His body was left in a ditch in a remote area and was discovered the next day.

Two days later, Leffew gave a statement to Bexar County Sheriff's Detective Alfred Damiani. She admitted that she initially drugged the victim, but she said that the appellant was responsible for strangling and killing him. Leffew was charged and put in jail.

The appellant introduced the testimony of two inmates of the jail, Veronica Molina and Maria Renteria, who said that Leffew talked to them. They said that Leffew took responsibility for the murder.

During the defense's case in chief, Molina testified that Leffew regularly talked about what she did and felt no remorse about her actions. She testified that Leffew never liked the victim, and gave him alcohol and pills because "they talk better when they're drunk." She also testified that Leffew stated the appellant tried to stop them, but Leffew threatened her if she

interfered. Leffew also said that she and Rodriguez planned to purchase and collect insurance fraudulently after the victim's death. Finally, Leffew told Molina that the appellant loved the victim and didn't intervene because Leffew threatened to hurt the appellant's children if she did.

The other jail inmate, Renteria, testified that Leffew talked regularly about the murder. Specifically, Leffew explained how she drugged the victim repeatedly with Ativan and tied him up. Leffew also said that she attempted to lock the appellant in another room because the appellant kept trying to help the victim.

Leffew was unavailable to testify at trial, claiming a Fifth Amendment privilege.

During rebuttal, the State called Detective Damiani to read portions of Leffew's statement in which she denied her direct involvement in the murder. The defense objected to this testimony as a violation of the Confrontation Clause. The judge overruled the objection but gave a limiting instruction to the jury before the testimony.

The Fourth Court of Appeals affirmed the conviction, holding that the testimonial statements were properly admitted under Rule of Evidence 806 and were, therefore, not in violation of the Confrontation Clause.

Although we affirm the judgments of the courts below, we do so on a different basis.

**Discussion**

The Sixth Amendment to the United States Constitution protects an accused's right to be confronted with the witnesses against her in all criminal prosecutions. In *Crawford*, the Supreme Court held this to mean that the admission at trial of a testimonial, out-of-court statement is barred by the Confrontation Clause, unless the defendant has had a prior opportunity to examine

the witness and the witness is unavailable to testify.[5] Hearsay – an out-of-court statement offered in evidence to prove the truth of the matter asserted – may be admissible under evidentiary rules.[6] But hearsay statements nevertheless must overcome the Confrontation Clause bar, which may be implicated if the defendant is not afforded the opportunity to confront the out-of-court declarant.[7] *Crawford* made clear that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."[8]

The Supreme Court has distinguished between testimonial hearsay and testimonial nonhearsay in designating those statements to which the confrontation right attaches. *Crawford* held that the confrontation right is implicated where testimonial, hearsay statements are at issue.[9] But it also cited with approval its decision in *Tennessee v. Street*, to note that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[10] In *Street*, the defendant in a murder case claimed that his confession had been coerced.[11] He testified at trial that the sheriff had read to him the statement of an accomplice and had ordered him "to say the same thing."[12] The State called the

---

[5] *Crawford*, 541 U.S., at 68.

[6] See TEX. R. EVID. 801(d).

[7] *Shuffield v. State*, 189 S.W.3d 782, 790 (Tex. Cr. App. 2006).

[8] *Crawford*, 541 U.S., at 68-69.

[9] *Id.*, at 68.

[10] *Id.*, at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

[11] *Street*, 471 U.S., at 411.

[12] *Ibid*.

sheriff to read the accomplice's statement in order to demonstrate the discrepancies between the two confessions and to rebut Street's contention that his confession was coerced.[13] The trial court admitted the statement and provided jurors with a limiting instruction.[14] The Supreme Court found that the accomplice's confession was not introduced to prove the truth of its content, but rather only to rebut Street's testimony that his confession was coerced, and therefore was not hearsay.[15] The Court said that "[t]he *nonhearsay* aspect of [the accomplice's] confession – not to prove what happened at the murder scene but to prove what happened when respondent confessed – raises no Confrontation Clause concerns."[16]

In this court, the appellant contends that Leffew's testimonial statement to Damiani was inadmissible under *Crawford* as a violation of the Confrontation Clause. She argues that the statement, although purportedly offered as impeachment evidence and admitted as such, was in fact offered for the truth of the matter asserted. Because Leffew did not testify, the appellant maintains, the jury could not evaluate her credibility and demeanor. Jurors therefore had nothing upon which to base a credibility determination except to compare the truth of Leffew's two inconsistent statements. The appellant further argues that Rule 806 conflicts with the holding of *Crawford* because it allows the impeachment of one hearsay statement with another hearsay statement, permitting a *Crawford* violation in a case where the declarant does not testify.

---

[13] *Id.*, at 411-12.

[14] *Id.*, at 412.

[15] *Id.*, at 413.

[16] *Id.*, at 414 (emphasis in original).

The statement offered by the State through Damiani was clearly testimonial under *Crawford*[17] and *Davis v. Washington*.[18] Although *Crawford* did not provide a bright-line rule for what is to be considered testimonial, it explicitly held that a "recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition."[19] Here the State offered, and the trial court admitted, a custodial interrogation of a co-accused. This clearly falls within the ambit of the *Crawford* decision.

The question is whether, despite having been labeled as "impeachment" evidence, Leffew's statement to Damiani was in reality hearsay, offered to prove the truth of the matter asserted, as the appellant contends. We agree with the Court of Appeals that it was not.

As in *Street*, where the accomplice's statement was used for the nonhearsay purpose of impeaching Street's testimony about his confession, Leffew's statement to Damiani was used in rebuttal for the nonhearsay purpose of impeaching her credibility. When the appellant called the declarant, Leffew, to testify through the inmate witnesses, she placed the declarant's credibility in

---

[17] 561 U.S. 36.

[18] 547 U.S. 813 (2006).

[19] *Crawford*, 561 U.S., at 53 n.4.

issue. Under Rule 806,[20] in conjunction with Texas Rule of Evidence 613(a),[21] the State was then permitted to impeach her credibility by introducing her prior inconsistent statement.

The record reflects that the statement Damiani read in rebuttal was redacted so that it contained only those portions of Leffew's statement that were inconsistent with the testimony of Molina and Renteria, the jailhouse inmates. Before allowing Damiani to read the statement, the trial judge told the jury they were to consider it only for the express limited purpose of impeaching Leffew's credibility. He included a similar limiting instruction in the jury charge. During closing arguments, the State discussed the substance of its witnesses' testimony in order to argue the appellant's guilt. But the State never referred to Leffew's statement to Damiani as substantive evidence.

Contrary to the appellant's contentions, the jury could have given effect to Leffew's statement to Damiani by more than one means than taking the content for its truth. "The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of

---

[20] Rule 806 reads:
When a hearsay statement, or a statement defined in Rule 801(e)(2)(C), (D), or (E), . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, offered to impeach the declarant, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

[21] Rule 613(a) provides the procedures by which a witness can be examined regarding a prior inconsistent statement.

both statements."[22] The jury could have decided that Leffew's inconsistent statements demonstrated that she was not a credible witness, and therefore that neither of her statements could be believed.

## Conclusion

For the reasons stated, we hold that Leffew's statement to Damiani was properly offered and admitted, not to prove the truth of the matter – that the appellant committed the crime – but rather for the nonhearsay purpose of impeaching Leffew's credibility. The statement, as nonhearsay, did not implicate the appellant's confrontation rights and was therefore admissible under *Crawford*. In so holding, we reject the appellant's contention that Rule 806 is in conflict with the principles of *Crawford*.

We affirm the judgment of the Court of Appeals.

Delivered October 15, 2008.
Publish.

---

[22] EDWARD W. CLEARY, ED., MCCORMICK ON EVIDENCE § 34, p. 74 (3rd ed. 1984).