Opinion issued May 14, 2009

 















     

                                        

                               
In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00306-CR




CARLOS HERNANDEZ, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 997200


 
 
 
 
 
 
MEMORANDUM OPINION
          A jury convicted appellant, Carlos Hernandez, of aggravated robbery with a
deadly weapon. See Tex. Penal Code Ann. §§ 7.02(a)(2), 29.03(a)(2) (Vernon
2003). The jury assessed punishment at 26 years in prison. In four issues, appellant
contends that the trial court erred by denying appellant’s motion to suppress his
videotaped statement; overruling appellant’s objections under the hearsay rule and
the Confrontation Clause of the Sixth Amendment to the United States Constitution
to particular statements made by investigating officers during the videotaped
statement; and overruling appellant’s objection to improper jury argument by the
State. We affirm.
Background
          Appellant was charged in connection with his role in an armed robbery at a car
wash. On April 1, 2004, Houston Police Department Sergeant Peters was dispatched
to a car wash to investigate a reported shooting. At the scene, he found the
complainant face down next to his Ford Expedition, dead from a gunshot wound.
Peters testified that, after he commenced his investigation, he received a call from an
officer assigned to the Latin squad robbery division, who pointed Peters to several
people who witnessed and participated in the crime. 
          Jenna Zoeller and Veronica Roman, two of the witnesses with whom Peters
spoke after receiving the tip, testified at trial. Both testified that they were riding
around in a car with appellant and several other people and eventually pulled into a
car wash. Roman testified that, when the group arrived at the car wash, she heard
appellant “talking about the speakers in the [complainant’s] truck.” Roman further
testified that appellant and three other men, one of whom was named Rolando
Ramirez, got out of the car and approached the complainant, who was cleaning his
truck. Roman testified that appellant pushed the complainant and then, as the
complainant began to hand over his car keys, Ramirez pulled out a firearm and shot
the complainant. 
Warnings on the Videotape
          Officer Flores of the Houston Police Department and Peters interrogated
appellant during the investigation of the robbery. Initially, Flores asked appellant,
who did not speak English, questions in Spanish. After a few minutes, Peters entered
the room and began to ask questions in English, with Flores serving as translator.
During the interrogation, appellant admitted to trying to start the complainant’s car
but said that Zoeller, rather than Ramirez, shot the complainant.
          At the beginning of the interrogation, Flores read appellant his rights in both
English and Spanish and then began to question him:



[Flores]: Okay. I am going to read you . . . I am going to read you your legal
warnings. I am going to read him his rights. I read it in English and then in
Spanish. You have the right to remain silent and not make any statement at all.
That any statement you make, may be used against you and probably will be
used against you at your trial. Any statement you make may be used as
evidence against you in court. You have the right to have a lawyer present to
advise you prior to and during any questioning. If you are unable to employ a
lawyer, you have the right to have a lawyer appointed to advise you prior to
and during any questioning. You have the right to terminate this interview at
any time. I am going to read to him in Spanish. Pay attention okay? You have
the right to maintain your silence and say absolutely nothing. Any statement
that you make can be used against you in the case that you are accused of.
Understand? Yes? Yes or no.

          [Appellant]: Uh huh.
 
[Flores]: Okay. Any statement that you make can be used as evidence against
you in court. Understand? Yes or no? Yes?

          [Appellant]: Uhhh.
 
[Flores]: Okay. You have the right to have an attorney present so he can advise
you before questions are made to you and during the time that questions are
made. Understand?

          [Appellant]: Yes.
 
[Flores]: If you can not employ an attorney. [sic] You have the right that an
attorney be assigned so he can advise you before or during the time that
questions are made. Understand?

          [Appellant]: Uhhh.
 
[Flores]: You have the right to end this interview at any time you say.
Understand?

          [Appellant]: Yes.

          [Flores]: Okay. You understand your legal warnings?

          [Appellant]: Yes.
 
[Flores]: He is admitting that he does understand his legal warnings. Okay,
what is your name sir?

          [Appellant]: Carlos Hernandez.

          [Flores]: Carnos [sic] Hernandez?

          [Appellant]: Carlos Hernandez.
 
[Flores]: Okay. Okay, Carlos. I am Officer Flores. Houston Police Department.
We are here at One. Two, zero, zero [sic] Travis, the street is called Travis.
Floor number six, in the homicide division. We are investigating the case, five,
zero, two . . . eight, two . . . eight, two, nine, zero, four, T as in Texas. Case
number is zero, five, zero, two, eight, two, nine, zero, four, T as in Tom. It’s
a murder that took place at seventy two o four Harrisburg on April the four .
. . April the first two thousand four. Investigated by Sergeant Mike Peters and
Sergeant Hays. That’s a case that . . . an investigation that we are investigating
in, that happened, April first. It’s a homicide that happened in the car wash.

          [Appellant]: Uh huh.
 
[Flores]: In the car wash, it is a car wash the place where this happened. This
happened one April, this year, see? Seven, two, zero, four Harrisburg. On
Harrisburg.

          [Appellant]: Uh huh.

          [Flores]: Okay?

          [Appellant]: Uh huh.

          [Flores]: Are you bored or what?

          [Appellant]: I’m sleepy.

          [Flores]: Hmm. Huh? I’m Sleepy [sic].

          [Appellant]: Sleepy . . . (inaudible)
 
[Flores]: Okay. We . . . the investigators already know a lot about this case,
okay? They know a lot, okay. 

          [Appellant]: Uh huh.

          [Flores]: We know what happened on that day. You were with whom that day?

          [Appellant]: Where?

          [Flores]: That day. You were with Rolando and the other kids.

          [Appellant]: Uh huh.

The Officers’ Statements on the Videotape
          Later in the interrogation, the officers repeatedly referred to the statements of
unnamed witnesses and accused appellant of lying to protect one of the other men
who committed the robbery:
[Flores]: They are saying that you went to ask for the keys from the man. Give
me the keys.

          [Appellant]: (Chuckle)

          [Flores]: They saw you, the people. There was a lot of people who saw you.

          [Appellant]: Nah . . . (inaudible)

          . . .
 
[Flores]: We have, we have a lot of witnesses here. The people that say that
they saw you trying to ask for the keys from the kid.

          [Appellant]: Uh huh.
 
[Flores]: And saw Orlando [sic] shoot this kid. Orlando [sic] killed him.
Orlando [sic] shot him.

          . . .
 
[Flores]: Why, why do you think that the people are saying it was you two, you
and Orlando [sic] tried to rob that kid. Take the keys after Orlando [sic] shot
him? People, people that don’t know you there, that are looking, saying that.
They (inaudible) Orlando [sic].

          [Appellant]: Look, I know that the people who told you, do know us, right?

          [Flores]: I don’t know.
 
[Appellant]: No. I do know. I mean . . . but you, you also know why they said
that right? Because he, she also wants to come out clean. He or she who told
you, no?

          . . .
 
[Peters]: [Y]ou need to tell me the truth which I know because other people
have told me. Not just one person has told me this story, several people have
told me.

          [Flores, translating]: Because you need to help yourself because (inaudible).

          [Peters]: They both told me the same story.
 
[Flores, translating]: He spoke with different witnesses to him that saw, they
said the same history [sic]. The same history . . . (inaudible).

          [Peters]: You are not helping yourself by not telling us the truth.
 
[Flores, translating]: You’re not helping yourself for you to tell lies. You need
to tell the truth. You are not the person that caused the harm.

          [Appellant]: No.

          . . .

          [Peters]: So what are you going to tell us?

          [Flores, translating]: Are you going to stay with the same history [sic]?

          [Appellant]: That’s it. (inaudible) 

          . . .
 
[Peters]: No, we have witnesses, the witnesses that just saw the shooting, that
aren’t in the truck.

          [Flores, translating]: We have other people that were just there . . . (inaudible)

          . . .
 
[Appellant]: Look, like, like, how, how can people see from over here, from the
bar all the way to the car wash if there is no lights at the car wash?

          . . .
 
[Flores, to Peters]: He is saying that Gina did the shooting and then when he
tried to start the [complainant’s] car, it didn’t start, so then he got over and
Gina tried to start the truck and couldn’t get over, then they took of [sic]
running down the street. I mean he’s sticking to his story, He’s [sic] not
changing it.

          In response to appellant’s hearsay and Confrontation Clause objections, the
prosecutor stated that the officers’ statements were not being offered to prove the
truth of the matters asserted. The trial court overruled appellant’s objections.
Motion to Suppress
          In his first and second issues, appellant contends that the trial court erred in
denying his motion to suppress his videotaped statement. The trial court found that
appellant “voluntarily and knowingly ma[d]e the statement to the officer who was
interrogating him after having been warned in conformity with the statute.”
Standard of Review
          We review a trial court’s ruling on a motion to suppress evidence for an abuse
of discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We
review the record in the light most favorable to the trial court’s conclusion. Id. We
will sustain the trial court’s ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case. Id. We give almost total deference
to the trial court’s determination of historical facts and review de novo the trial
court’s application of the law to those facts. Id. 
 
Waiver of Rights
          In his first issue, appellant contends that the trial court erred in admitting
appellant’s videotaped statement because the interviewing officers did not obtain a
knowing, intelligent, and voluntary waiver of appellant’s rights as required by Article
38.22 of the Texas Code of Criminal Procedure.
          Section 3(a) of Article 38.22 provides that:
(a) No oral or sign language statement of an accused made as a result of
custodial interrogation shall be admissible against the accused in a criminal
proceeding unless:
(1) an electronic recording, which may include motion picture, video tape, or
other visual recording, is made of the statement;
(2) prior to the statement but during the recording the accused is given the
warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning . . . .

Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon 2005).
          The record shows that no express waiver of appellant’s rights appears on the
recording. However, “the law does not require that the recording reflect an express
waiver of the rights.” Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000) (citing
Etheridge v. State, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994), cert. denied, 516 U.S.
920, 116 S. Ct. 314 (1995)). A waiver of rights may be inferred from the actions and
words of the person interrogated. State v. Oliver, 29 S.W.3d 190, 191-92 (Tex.
App.—San Antonio 2000, pet. ref’d) (citing Barefield v. State, 784 S.W.2d 38, 40-41
(Tex. Crim. App. 1989), overruled on other grounds, Zimmerman v. State, 860
S.W.2d 89, 94 (Tex. Crim. App. 1993)).
          Appellant acknowledges Barefield and Oliver in his brief but argues that a
waiver cannot be inferred in this case because the interrogation began at
approximately 10:55 p.m.; appellant “spoke no English” and was handcuffed and
“sleepy;” Flores “told [appellant] his rights and never asked him if he wanted to
waive his rights;” and the warnings given by Flores were “incomplete” because
Flores did not inform appellant that any statement “would probably be used” against
him. 
          Article 38.22 requires the person to whom a statement is made to warn the
accused that:
(1) he has the right to remain silent and not make any statement at all and that
any statement he makes may be used against him at his trial;
          (2) any statement he makes may be used as evidence against him in court; 
(3) he has the right to have a lawyer present to advise him prior to and during
any questioning; 
(4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and 
          (5) he has the right to terminate the interview at any time; . . . .

Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 2005).
          The record reflects that Flores translated the article 38.22 warnings into
Spanish (after reading them in English)


 and then began asking questions in Spanish.
Appellant indicated at the outset of the interview that he understood the warnings and
then immediately began to answer Flores’s questions, conduct which permits an
inference of waiver. Oliver, 29 S.W.3d at 193 (discussing Barefield and Garcia v.
State, 919 S.W.2d 370, 387 (Tex. Crim. App. 1994)) (“[I]t is clear the Court of
Criminal Appeals has approved the inference of a waiver from the totality of the
circumstances in the situation where an oral confession contains a recitation of the
art. 38.22 warnings and the defendant indicates he understands his rights and
proceeds without hesitation to participate in the interview.”). Further, the statute does
not require the person to whom a statement is made to warn the accused that the
statement “would probably be used” at trial, and we can find no caselaw establishing
such a requirement.
          We overrule appellant’s first issue.
Improper Inducement
          In his second issue, appellant contends that the trial court erred in admitting
appellant’s statement because the statement was improperly induced. Specifically,
appellant argues that Peters implied to appellant that “if [appellant] told Peters the
truth Peters wanted to hear, Peters would use his influence with the judge and the
attorneys” to lessen appellant’s punishment.
          Appellant filed a motion to suppress the videotaped statement, a second set of
written objections to admission of the videotape, and a more general motion
requesting suppression of “any custodial statements” made by appellant “as being the
product of illegal conduct by the State and its agents and involuntary.” However,
none of these filings mention appellant’s argument that the videotaped statement was
improperly induced, and appellant did not put that argument before the trial court at
either the hearing on his motions to suppress or at trial. Where a complaint on appeal
does not comport with an objection made at trial, the error is not preserved on the
complaint. Schultze v. State, 177 S.W.3d 26, 41 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d) (citing Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996)). 
 
          Although appellant stated generally that the State’s conduct in obtaining the
statement was illegal and requested an independent finding by the trial court, pursuant
to article 38.22, section 6 of the Code of Criminal Procedure, as to whether his
statement was made under voluntary conditions, these statements were not specific
enough to preserve appellant’s argument that his statement was improperly induced.
See Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (general contentions
in motion to suppress and at hearing that defendant’s statements were obtained in
violation of his right to counsel and his right against self-incrimination; were
inadmissible under Articles 14.03, 14.06, 38.22, and 38.23 of Code of Criminal
Procedure; and were product of illegal arrest were not sufficiently specific to preserve
argument that statements were inadmissible because police questioned defendant after
defendant requested appointment of counsel).
          Because appellant failed to preserve his second issue for review, it is overruled.
Accordingly, we conclude that the trial court did not abuse its discretion by denying
appellant’s motion to suppress his videotaped statement.
Hearsay and the Confrontation Clause
          In his third issue, appellant contends that the trial court erred by overruling his
objections to various statements made by Flores and Peters on the interrogation
videotape challenging appellant’s version of events by citing the accounts of
unnamed witnesses. Appellant objected to the statements on the grounds that they
were inadmissible in court under the hearsay rule and the Confrontation Clause and
should have been redacted from the videotape and transcript. The State argues that
the statements were not offered to prove the truth of the matters asserted and were
therefore not hearsay.
Standard of Review
           A trial court has broad discretion in determining the admissibility of evidence. 
Canseco v. State, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (citing Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994)). Thus, we
will not reverse an evidentiary ruling unless the record shows a clear abuse of
discretion. Canseco, 199 S.W.3d at 439 (citing Williams v. State, 535 S.W.2d 637,
639-40 (Tex. Crim. App. 1976)). An abuse of discretion occurs when the trial court
acts without reference to guiding rules or principles or acts arbitrarily or
unreasonably. Canseco, 199 S.W.3d at 439 (citing Galliford v. State, 101 S.W.3d 600,
604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d)). 
Hearsay
          Hearsay is “a statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”
Tex. R. Evid. 801(d). The State argued at trial that the complained-of statements were
offered not to prove the truth of the matters asserted but “as part of [the officers’]
interrogation tactics.” On appeal, the State further explains that the officers made the
statements “to test the veracity of appellant’s statement” and reiterates that the
officers’ statements were offered only as part of the interrogation. 
          Statements offered only to show their effect on the listener are not hearsay. In
re Bexar County Crim. Dist. Attorney’s Office, 224 S.W.3d 182, 188-89 (Tex. 2007);
Young v. State, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref’d). Further,
statements made by police officers during an interview are not hearsay if they are
offered only to give context to the interviewee’s replies, even if the officers accuse
the interviewee of lying and refer to the statements of unnamed witnesses. Kirk v.
State, 199 S.W.3d 467, 478-79 (Tex. App.—Fort Worth 2006, pet. ref’d) (holding
that trial court did not abuse its discretion by overruling hearsay objection to
following statements by detective during tape-recorded interview: “I feel like maybe
you’ve been a little untruthful with me” and “If we had a person who—if we had a
person who was telling us that they [sic] saw you walking alone to this house. What
would you think about that. . . . If we had a person that [sic] saw you leaving that
house with that vehicle what would you think of that?”). 
          We hold that the record supports the determination that the statements by
Flores and Peters were not offered to prove the truth of the matters asserted.
Regardless of whether the officers’ statements were true, redaction of those
statements would have rendered incoherent appellant’s responses, many of which
were nonverbal or were simple expressions of assent or denial. On the other hand,
inclusion of the officers’ statements gave appellant’s reactions meaning. The trial
court could reasonably have concluded that the officers’ statements were offered
either to provide context for appellant’s statements or to show the effect of the
officers’ statements on appellant. Accordingly, we hold that the trial court did not
abuse its discretion by overruling appellant’s hearsay objection.
Confrontation Clause
          The Confrontation Clause of the Sixth Amendment to the United States
Constitution bars the admission at trial of a testimonial out-of-court statement unless
two requirements are met: unavailability of the witness and a prior opportunity for the
person against whom the statement is offered to cross-examine the witness. Crawford
v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004); Del Carmen
Hernandez v. State, 273 S.W.3d 685, 687 (Tex. Crim. App. 2008). However, the
Clause “does not bar the use of testimonial statements for purposes other than
establishing the truth of the matter asserted.” Del Carmen Hernandez, 273 S.W.3d at
687 (quoting Crawford, 541 U.S. at 59 n. 9, 124 S. Ct. 1354, 1369 n. 9). Having held
reasonable the trial court’s conclusion that the officers’ statements were not offered
to prove the truth of the matters asserted, we also hold that the Sixth Amendment’s
Confrontation Clause did not bar those statements.
          Accordingly, we hold that the trial court did not abuse its discretion by
overruling appellant’s hearsay and Confrontation Clause objections, and we overrule
appellant’s third issue.
Jury Argument
          In his fourth issue, appellant contends that the trial court erred by overruling
his objection to the prosecutor’s “stating an improper mental state required for
conviction as a party” during her closing argument. In support of his contention,
appellant refers to the following exchange:
[Prosecutor]: A person is criminally responsible for an offense committed by
the conduct of another if acting with intent to promote or assist the commission
of the offense he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.
 
But the part there [in the jury charge] about if he has the intent to promote that
offense, you may say, well, how do we know what the Defendant’s intent is?
Once again, in the charge it’s explained to you right here. A person acts
knowingly or with knowledge with respect to the nature of his conduct when
he is aware of the nature of his conduct or that the circumstances exist.
 
[Defense counsel]: We’d object that that would be an improper mental state as
far as the parties charge is concerned because it directly says: With the intent
to promote or assist the commission of the offense. It doesn’t talk about having
knowledge of the circumstances. So, the knowledge element may go to
something, but it doesn’t go to the party application. We’d object that she’s
arguing contrary to the law.
 
[The Court]: Members of the jury, that’s why we call it argument. You are
given the Court’s charge, the law in the Court’s charge. Both sides can give
their own versions. You will be guided by what you read and believe in the
charge. Overruled. You may proceed.
 
[Prosecutor]: A person acts intentionally or with intent with respect to the
nature of his conduct or to a result of his conduct when it is his conscious
objective or desire to engage in the conduct.

          In the above exchange, the prosecutor initially read language from the jury
charge that tracked the language of subsection (a)(2) of Section 7.02 of the Penal
Code, which outlines the law of parties. A conviction under Section 7.02(a)(2)
requires a finding that the defendant acted with intent to promote or assist the
commission of the offense. Tex. Penal Code Ann. § 7.02(a)(2). However, after
stating that she wished to highlight for the jury the definition of “intent,” the required
culpable mental state, the prosecutor instead read the definition of the “knowing”
mental state, which represented a lower burden of proof for the State.


 An argument
that contains a statement of the law contrary to the court’s charge is erroneous and
improper. Grant v. State, 738 S.W.2d 309, 311 (Tex. App.—Houston [1st Dist.] 1987,
pet. ref’d). We hold that the trial court erred in overruling appellant’s objection. 
          However, our analysis does not end there. The erroneous overruling of a
defendant’s objection to prosecutorial misstatement of the law is not constitutional
in nature. Herrera v. State, 11 S.W.3d 412, 415 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d). Hence, we disregard the error unless the appellant’s substantial
rights were affected. Id. (citing Tex. R. App. P. 44.2(b)). “A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict.” Id. (quoting King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997)). To determine if the prosecutor’s misstatement of the law in her
closing argument to the jury had a substantial and injurious effect or influence in
determining the jury’s verdict, we look at all the evidence and the court’s charge, as
well as the prosecutor’s misstatement. Herrera, 11 S.W.3d at 415. Absent evidence
to the contrary, a jury is presumed to follow the instructions set forth in the court’s
charge. Id. at 415-16 (citing Hutch v. State, 922 S.W.2d 166, 172 (Tex. Crim. App.
1996)).
          Here, the court’s charge properly instructed the jury on which mental state the
State had to prove in order to secure a conviction under the law of parties, and,
through its witnesses and appellant’s own statement, the State introduced evidence
sufficient to support a jury finding of intent. Moreover, the record reflects that,
immediately after appellant’s objection and the trial court’s ruling, the prosecutor
read the definition of the correct mental state, that of intent.


 The prosecutor also
reiterated the proper mental state later in her argument by saying, “If you believe
[appellant] intended to help out Rolando and Joel and Luis, then he’s guilty of
aggravated robbery [emphasis added].”
          We conclude that the jury followed the instructions given in the court’s charge
and that the presumption to that effect has not been rebutted. Accordingly, we hold
that the State’s misstatement of the law in its closing argument to the jury did not
have a substantial and injurious effect or influence in determining the jury’s verdict
of guilt and overrule appellant’s fourth issue. 
Conclusion
          We affirm the judgment of the trial court.
 
                                                             George C. Hanks
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Hanks.
Do not publish. See Tex. R. App. P. 47.2(b).