

# NUMBER 13-22-00093-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JEREMY OBRYAN RUCKER,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Benavides

Appellant Jeremy Obryan Rucker appeals from a judgment revoking his community supervision and adjudicating him guilty of repeatedly violating certain bond conditions or a protective order, a third-degree felony, and sentencing him to ten years' imprisonment. *See* TEX. PENAL CODE ANN. § 25.072(e). By two issues, Rucker argues that (1) the evidence was insufficient to show Rucker violated the terms of his community

supervision, and (2) the admission of body camera footage violated Rucker's rights under the Confrontation Clause of the United States Constitution. *See* U.S. CONST. amend. VI. We affirm.

## I.     BACKGROUND

On February 1, 2021, Rucker pleaded guilty to repeatedly violating certain bond conditions or a protective order. The trial court deferred adjudication of Rucker's guilt and sentenced him to three years community supervision.

On April 22, 2021, the State filed its first motion to adjudicate guilt, alleging that Rucker violated the terms of his community supervision by: (1) committing a new offense by violating certain bond conditions or a protective order; (2) failing to complete a minimum of twelve hours of community service per month; and (3) contacting Silvas or visiting her place or employment or residence. He pleaded true to the allegations in the motion, and Rucker received a fifteen-day jail sanction and was continued on community supervision.

On November 2, 2021, the State filed a second motion to adjudicate guilt, alleging that Rucker violated the terms of his community supervision by: (1) committing the offense of violating certain bond conditions or a protective order; (2) committing the offense of "Failure to Identify"; (3) failing to complete eighty hours of community service by October 1, 2021; and (4) contacting Silvas or visiting her place of residence or employment. Rucker pleaded true to the allegations in the motion to adjudicate guilt, and on November 23, 2021, the trial court extended Rucker's period of community supervision by one year.

Finally, on January 25, 2022, the State filed its third motion to adjudicate guilt,

alleging that Rucker violated the terms of his community supervision by: (1) committing the offense of violating certain bond conditions or a protective order; (2) committing "Burglary with Intent to Commit Assault"; (3) failing to complete eighty hours of community service by October 1, 2021; and (4) contacting Silvas or visiting her place of employment or residence.

On March 1, 2022, Rucker filed a motion to suppress the body camera footage of Officer Thomas Kennemer of the Victoria Police Department on the grounds that its admission as evidence violated the Confrontation Clause of the United States Constitution.

On March 2, 2022, the trial court held a hearing on the State's motion to adjudicate guilt. Rucker pleaded not true to the allegations raised in the State's motion. The State first called Officer Kennemer to testify. Without objection, Officer Kennemer testified that on December 3, 2021, he "met with [Silvas], and she stated that she had been assaulted by Jeremy Rucker." The State moved to admit his body camera footage from that evening, and Rucker objected as follows:

> [COUNSEL FOR RUCKER]: Your Honor, at this time[,] I'm going to object to that because it violates the confrontation clause, which I filed a motion on. At which point Ms. Silvas testifies, then I believe it would be admissible, Your Honor.
>
> THE COURT: All right. At this time[,] your objection is noted. It's overruled. The Court will not consider any hearsay evidence or any evidence that violates Crawford versus Washington. But State's Exhibit No. 2 is admitted.

A 911 call made that evening by Silvas's fifteen-year-old daughter was also

3

admitted into evidence. In the call, Silvas's daughter states that her "mom and her boyfriend are fighting" and identified Rucker as Silvas's boyfriend.

Alizah Cervantez, Silvas's other daughter, also testified to the incidents of December 3. Cervantez testified that Rucker "forced his way inside" Silvas's home and that she saw Rucker "throw [Silvas] to the floor." Cervantez then "helped [Silvas] up" and Rucker "just took off running."

Silvas testified that Rucker did not have permission to enter her home on the night of December 3, 2021. According to Silvas, "[w]hen [she] said [she] was going [to] call the cops, that's when [Rucker] got angry; and he just started swinging." Silvas felt pain in her arm and "had bruises all over [her] chest, [her] back." Silvas testified that Rucker "threw [her] on the floor." Partway through Silvas's testimony, the trial court paused the proceedings. When it returned, the trial court stated, "All right. The record should reflect the [c]ourt has reviewed the exhibits, State's 1 and State's 2. Defendant's objection to the exhibits [is] overruled."

Brannon Baxley, Rucker's probation supervisor, also testified. Baxley testified that Rucker had only completed "15 and a half" hours of community service, despite the fact that "[h]e should already have all the hours done."

Rucker and his father testified to Rucker's whereabouts on December 3, 2021. According to both, they were watching football on his father's couch that evening. Rucker denied assaulting Silvas and agreed that "she's just so in love with [him] that she's willing to make all this up to send [him] to prison so that no one else can have [him]."

4

At the conclusion of the hearing, the trial court took the matter under advisement. The following day, it found true the State's allegations that Rucker violated the conditions of his community service by: (1) "[c]omit[ting] [an] offense against the laws of this State or of any other [S]tate or of the United States of America"; (2) failing to "[p]erform satisfactorily 80 Community Service hours"; and (3) contacting Silvas. The trial court adjudicated Rucker guilty for repeatedly violating certain bond conditions or a protective order and sentenced him to ten years' imprisonment. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

Rucker contends that the evidence was insufficient to show that he violated the conditions of his community supervision.

### A.    Standard of Review

We review an order revoking community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). "To convict a defendant of a crime, the State must prove guilt beyond a reasonable doubt, but to revoke probation (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by a preponderance of the evidence." *Hacker*, 389 S.W.3d at 864–65. In other words, the State need only show that the greater weight of the evidence creates a reasonable belief that the defendant has violated a condition of his probation. *Rickels*, 202 S.W.3d at 763–64. A trial court abuses its discretion by revoking probation when the State has failed to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984). We examine the record in the light most favorable to the trial

5

court's ruling. *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.).

**B.     Analysis**

Baxley, Rucker's probation supervisor, testified that Rucker had only completed "15 and a half" hours of community service, even though "[h]e should already have all the hours done, which would be 80 hours." This testimony alone was sufficient to establish that Rucker did not complete eighty hours of community service by October 1, 2021, and therefore, violated a community supervision condition. *See Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see also Deleon v. State*, Nos. 01-15-00927-CR & 01-15-00928-CR, 2016 WL 6599622, at *2 (Tex. App.—Houston [1st Dist.] Nov. 8, 2016, no pet.) (mem. op., not designated for publication).

Although Rucker challenges the sufficiency of the evidence to support the two other violations the trial court found to be true, "proof of a single violation will support revocation." *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Therefore, we need not analyze the sufficiency of the evidence to support the remaining violations to determine that the trial court did not abuse its discretion by revoking Rucker's community supervision.

We overrule this issue.

### III.     CONFRONTATION CLAUSE

Rucker argues that the trial court's admission of Officer Kennemer's body camera footage violated the Confrontation Clause.

## A.    Standard of Review & Applicable Law

The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. "The Sixth Amendment's Confrontation Clause provides a simple yet unforgiving rule: the State may not introduce a testimonial hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant." *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)); *see Molina v. State*, 450 S.W.3d 540, 550 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

"Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). For federal constitutional error that the Supreme Court has not specifically designated as structural, "the applicable harm analysis requires the appellate court to reverse unless it determines beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment." *Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017).

## B.    Analysis

First, we note that there is some tension in the law as to whether the Confrontation Clause applies to revocation proceedings. In *Ex parte Doan*, the court of criminal appeals

discussed the "many similarities between a Texas revocation proceeding and a criminal trial" and concluded that its prior characterization of revocation proceedings as "administrative" was incorrect. *See* 369 S.W.3d 205, 208–12 (Tex. Crim. App. 2012). However, the court of criminal appeals referred to revocation hearings as "judicial proceedings," not criminal prosecutions. *See id.* at 212; *see also* U.S. CONST. amend. VI ("In all *criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]") (emphasis added); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation . . . is not a stage of a criminal prosecution . . . .").

Prior to *Doan*, every intermediate appellate court that addressed the issue determined that the Confrontation Clause did not apply to revocation proceedings. *See Wisser v. State*, 350 S.W.3d 161, 164 (Tex. App.—San Antonio 2011, no pet.) (citing *Diaz v. State*, 172 S.W.3d 668, 672 (Tex. App.—San Antonio 2005, no pet.)); *Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Smart v. State*, 153 S.W.3d 118, 120 (Tex. App.—Beaumont 2004, pet. ref'd); *see also Norman v. State*, No. 13-10-00017-CR, 2011 WL 2732673, at *3 (Tex. App.—Corpus Christi–Edinburg July 14, 2011, no pet.) (mem. op., not designated for publication).

After *Doan*, several appellate courts have reexamined the issue with varying results. *Compare Olabode v. State*, 575 S.W.3d 878, 881–82 (Tex. App.—Dallas 2019, pet. ref'd) (holding that the Confrontation Clause does not apply to revocation proceedings), *White v. State*, No. 02-21-00059-CR, 2022 WL 623450, at *7 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op., not designated for publication) (holding

8

same), *and Inman v. State*, No. 13-20-00349-CR, 2022 WL 709832, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, pet. granted) (mem. op., not designated for publication) (holding same in a transfer case), *with Hughes v. State*, No. 14-20-00628-CR, 2022 WL 778980, at *5 (Tex. App.—Houston [14th Dist.] Mar. 15, 2022, pet. granted) (holding that the Confrontation Clause does apply to revocation proceedings), *and Perez v. State*, No. 13-14-00300-CR, 2015 WL 4234236, at *1 n.2 (Tex. App.—Corpus Christi–Edinburg July 9, 2015, no pet.) (mem. op., not designated for publication) ("Therefore, if the Rules of Evidence and exclusionary rule apply to community supervision proceedings, so should the United States Constitution. With this in mind, we will fully analyze the merits of Perez's Confrontation Clause argument as applied to his revocation proceeding.").[1]

We analyze this case in light of our precedent in *Perez* and conclude that no Confrontation Clause violation occurred. *See Perez*, 2015 WL 4234236, at *1 n.2. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011); *see Del Carmen Hernandez v. State*, 273 S.W.3d 685, 687 (Tex. Crim. App. 2008). "The main purpose behind the Confrontation Clause is to secure for the opposing party the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016)

---

[1] The court of criminal appeals has granted review in two of these cases, and we trust this tension in the law will soon be resolved. *See Hughes v. State*, No. 14-20-00628-CR, 2022 WL 778980 (Tex. App.—Houston [14th Dist.] Mar. 15, 2022, pet. granted); *see also Inman v. State*, No. 13-20-00349-CR, 2022 WL 709832 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, pet. granted) (mem. op., not designated for publication).

(quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68–69. Here, the main purpose of the Confrontation Clause was satisfied as Rucker had the opportunity to cross-examine Silvas. *See Johnson*, 490 S.W.3d at 909.

True, Rucker's opportunity to confront Silvas did not occur simultaneously with the admission of Officer Kennemer's body camera footage, but "[e]vidence prematurely admitted in error may become admissible or be rendered harmless by subsequent evidence." *James v. State*, 102 S.W.3d 162, 175 (Tex. App.—Fort Worth 2003, pet. ref'd); *Williams v. State*, 604 S.W.2d 146, 149 (Tex. Crim. App. 1980). In his objection to the body camera footage, Rucker conceded that once Silvas testified, the footage "would be admissible." Therefore, any error in prematurely admitting Officer Kennemer's body camera footage was rendered harmless by the introduction of subsequent evidence, namely, Silvas's testimony. *See James*, 102 S.W.3d at 175.

Finally, even if a Confrontation Clause violation did occur, we conclude that it was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 22 (1967); *Lake*, 532 S.W.3d at 411. The body camera footage was wholly irrelevant to the State's allegation that Rucker failed to complete his community service hours, which we have already determined was supported by sufficient evidence. *See Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); *Garcia*, 387 S.W.3d at 26. Without the footage, the State's case on that issue was just as strong as it was with it. *See Scott*, 227 S.W.3d at 690. Additionally, the body camera footage was cumulative of and corroborated by

other evidence; specifically, the 911 call and Silvas's, Cervantez's, and Officer Kennemer's testimony. *See id.* Thus, we can declare this Court "satisfied, to a level of confidence beyond a reasonable doubt, 'that the error did not contribute to'" the judgment. *See id.* at 690–91.

We therefore overrule this issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of August, 2022.

11