**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00058-CR**
_____

**BRYCE THOMAS MEANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 19-12-16171-CR

**MEMORANDUM OPINION**

Appellant Means was indicted on a charge of sexual assault, a second-degree felony. Tex. Penal Code Ann. § 22.011(a)(1)(A). Pursuant to a plea-bargain agreement, Appellant pleaded "guilty," to the charge and was placed on deferred adjudication/community supervision for four years.

About three months after the trial court placed Means on community supervision, the State filed a motion to revoke based on Means' failure to comply

with multiple terms of his supervision. The court found that 14 of the 15 alleged grounds for revocation were true, revoked Means' community supervision, and sentenced him to 15 years in the Institutional Division of the Texas Department of Criminal Justice.[1] Means appeals, contending that the trial court erred in admitting three of the State's exhibits during the hearing on the motion to adjudicate.[2]

Finding no reversible error, we affirm the trial court's judgment.

## I. Background

At the revocation hearing, Means' probation officer, David Solis, was the sole witness for the State; he authenticated the State's exhibits C, D, and E, which Means contends were inadmissible hearsay. Exhibits C and D are photographs of images contained in Means' cell phone, and Exhibit E is a screenshot of an image contained in that same phone. We summarize Solis' testimony below.

David Solis works as a sex offender supervisor at the Montgomery County Adult Probation Department. He outlined his education, training, and experience in his position, noting that very few offenders are placed on probation for sexual assaults.

According to Solis, Means would have undergone a sex offender intake with the probation department shortly after being placed on probation in June 2021. The

---

[1] The trial court found ground four not true. Ground four alleged that Means submitted a diluted drug test on August 6, 2021.

[2] The trial court certified Means' right of appeal as to his sentence, only.

2

intake procedure includes reviewing all the conditions of probation and the sex offender registration forms so that the offender understands what behavior is required during his probation. The probation department also performs a risk assessment, which includes evaluating the offender's criminal history, employment history, family history, and the like, to create a case plan; the case plan is revised periodically to address any changes in an offender's risk.

During Means' risk assessment, he discussed his criminal history, which includes convictions for burglary of a motor vehicle and indecent exposure; the indecent exposure conviction resulted from a plea bargain in a charge of sexual assault. At that time, Means admitted contacting the complainant through a dating website, inviting her to his home, and putting GHB in her drink, intending to "take advantage of her." When the complainant began to feel light-headed, Means "began to have sex with her[.]" She regained consciousness and "tried to force him off, but he continued to have sex with her until he finished."

Means' terms of probation also required him to timely obtain a sex offender driver's license; to timely install RemoteCOM on his cell phone; to refrain from using the internet to access "a commercial social networking site[;]" to abstain from illegal drug possession and use; and to submit to random drug tests to monitor his

3

compliance.[3] Not only did Means fail to obtain the sex offender driver's license and install RemoteCOM within the allowed time frame, he failed or missed multiple drug tests; he contacted multiple women, including the complainant, through social media; he failed to make his required payments; and he otherwise failed to comply with the terms of his community supervision. Despite Means' failure to comply, however, he did show improvement and Solis acknowledged there is a possibility that Means could have successfully completed his probation.

Three witnesses testified for Means: his grandmother, his employer, and a recent acquaintance. Their testimony, however, is not relevant to the question presented on appeal; we therefore omit further discussion of their testimony.

## II. Issue Raised on Appeal

In one issue, Means argues the trial court erred in admitting State's exhibits C, D, and E, which consisted of two photographs and a RemoteCom screen shot of text messages found Means' cellphone. Means contends the trial court erred because each exhibit was inadmissible hearsay, and he claims he was harmed by the admission of the hearsay evidence.

---

[3] RemoteCOM is a program installed on computers and cell phones to detect and report certain activity. It allows the probation department access to the contents of the phone or computer.

## III. Analysis

We review a trial court's judgment revoking community supervision under an abuse of discretion standard. *Rickels v. State,* 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). We indulge all reasonable inferences in a light most favorable to the trial court's ruling. *Jones v. State,* 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). A finding of a single violation of community supervision is sufficient to support revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). An order revoking probation must be supported by a preponderance of the evidence which means that the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 763-64. The trial judge is the sole trier of facts, arbiter of the credibility of witnesses, and the weight to be given to the evidence presented. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980).

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d); *see Hernandez v. State*, 273 S.W.3d 685, 687 (Tex. Crim. App. 2008) (defining hearsay). Means' own statements would be admissions against interest and are not hearsay. Tex. R. Evid. 801(e)(2)(A); *see Trevino v. State*, 991 S.W.2d 849, 852-53 (Tex. Crim. App. 1999) (confirming that a party's own statements, when offered against him, are not hearsay). Portions of State's Exhibits C, D and E consist of Means' own statements

5

contained in text message exchanges.[4,5,6] Consequently, these statements are not hearsay, and were admissible against Means. *Id.*

As for the other parties' part of the text message exchanges, the prosecution argued at trial that such statements were not offered to prove the truth of the matter asserted, but to show context, and therefore they were not hearsay. *See Sandoval v. State*, 665 S.W.3d 496, 531 (Tex. Crim. App. 2022) (admitting an out-of-court statement to show context is a non-hearsay purpose, as it does not involve proving the truth of any matters asserted by the declarant). Here, as in *Sandoval*, the trial

---

[4] Exhibit C contains the following text message exchange regarding a missing weapon (spelling as in original):

[other party]: Idk when you took it but ever sense you stopped coming around nothing comes up missing

Means: The gun was there after that night I remember seeing it on your dress in that hart red bag and you where there the whole time I was serechin

[5] Exhibit D consists of a text message exchange between Means and an unknown person; in this exchange, Means is soliciting the other person for a sexual encounter (spelling as in original).

Means: Hey there hun ill do anything to have you tonight I well let you use me for hours

[other party]: Oh my. Is that right?

Means: Yes mam its my brithday ill do anything if you come over

[other party]: Well happy birthday sir

Means: I live in willis and we could go to my lake house hun

Means: I will be your slave

[other party]: that's hot what can I do with you?

Means: whatever you want

[6] In Exhibit E, Means tells Jade to "remind Cody about my phone I just got that stuff on it," to which Jade replies "Erase everything . . . Cody said get a burner phone not text but calls only. Otherwise Cody said we won't be able to contact you anymore like that because that's too much heat. You need to lay low be smart . . . ."

6

court could have reasonably concluded that the complained-of statements made by Means were admissions by Means and the statements made by third parties were offered to show the context of Means' statements and were not intended to show the truth of the matter asserted in the statements. *Id.* Exhibit D tends to corroborate Solis' testimony that Means was contacting women on "commercial social networking" websites in violation of his community supervision order. Tex. Code Crim. Proc. Ann. art. 62.0061(f). Exhibit E shows that Means was associating with people who urged him to buy a burner phone and to circumvent his probation restrictions, thus violating the prohibition against socializing with "persons . . . of disreputable or harmful character[.]"

We cannot say the trial court abused its discretion in admitting the exhibits and we overrule Means' sole appellate issue.

## IV. Conclusion

The trial court did not abuse its discretion in admitting the challenged exhibits. We conclude that the order revoking probation is supported by a preponderance of the evidence because the greater weight of the credible evidence creates a reasonable belief that the defendant violated one or more conditions of his community supervision. *Rickels,* 202 S.W.3d at 763-64. The trial court did not abuse its discretion in finding that Means violated one or more terms and conditions of his community supervision, and in revoking his community supervision and sentencing

7

him to 15 years in the Texas Department of Criminal Justice, Institutional Division.

We affirm the 15-year sentence imposed by the trial court.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on November 14, 2023
Opinion Delivered April 3, 2024
Do Not Publish

Before Horton, Johnson and Wright, JJ.