

# NUMBER 13-08-470-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

PABLO PADILLA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 105th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Pablo Padilla, and a co-defendant, Carlos Gonzales,[1] were indicted for the capital murder of Victor Morales. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008). In a separate trial, a jury found Padilla guilty: because the State did not seek

---

[1]Gonzales is not a party to this appeal.

the death penalty, the trial court assessed punishment at life imprisonment. *See id.* §
12.31(a). By two issues, Padilla argues that the trial court erred by admitting a portion of
his video-taped statement into evidence, and he challenges the legal and factual
sufficiency of the evidence to support his conviction. We affirm.

## I. FACTUAL BACKGROUND

Traci Romero and her husband, Morales, lived in Corpus Christi, Texas. On the
morning of February 22, 2007, Romero went to work, leaving Morales at home. When she
returned that afternoon, she found Morales's dead body on the living room floor in a pool
of blood. Romero testified that drawers in their bedroom had been opened and that jewelry
was missing. The medical examiner testified that Morales died from a skull fracture and
that his injury was consistent with being struck by a blunt object.

After the murder, Detective Richard Garcia discovered that Padilla had pawned
some jewelry in Corpus Christi and in San Antonio. The jewelry was recovered, and
Romero identified it as the jewelry that was missing from the house on the day of the
murder. Padilla was arrested and provided a video taped statement to the police. In his
statement, Padilla, after waiving his *Miranda*[2] rights, stated that he and Carlos Gonzales
were close friends. On the day of the murder, he and Gonzales drove Gonzales's mother's
car from Mathis, Texas, to Morales's home in Corpus Christi. Padilla stated that he did not
know Gonzales's reason for going to Morales's home and that he did not know Morales.

Padilla stayed inside the car while Gonzales knocked on the front door of Morales's
house. About two minutes later, Gonzales entered the home. Less than a minute later,
Gonzales came out of the house and signaled for Padilla to come into the house. When

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

Padilla went inside, he saw Morales's body laying on the floor in a pool of blood. He stated that he did not see Gonzales hit Morales, but he did see Gonzales drag the body away from the door. While Padilla was in the house, he saw Gonzales go into another room and return with a small white plastic bag and some cash. He said that Gonzales told him that he had used a "tire checker" to hit Morales twice in the head. Gonzales closed the front door, and they ran to the car. When they got in the car, Padilla saw that Gonzales had a foot long "tire checker" in his hand. They returned to Gonzales's home in Mathis. Gonzales changed out of his bloody clothes and put them and the "tire checker" into a cardboard box. They then drove down a county road and discarded the clothes and the "tire checker". Gonzales gave Padilla $80 and some jewelry. He stated that both he and Gonzales pawned the jewelry using Padilla's driver's license. Padilla explained that he did not call the police because he was afraid of Gonzales.

After providing the statement, Padilla took Detective Garcia to the location where Gonzales discarded the clothing and "tire checker". Police recovered the "tire checker" as well as some gloves that Padilla identified as "being involved" in the murder. Romero testified that she knew Gonzales because he had been to her home on prior occasions to purchase marihuana from Morales.

David Curtiss, a crime-scene investigator, used luminol to test for blood inside of Gonzales's mother's car. He testified that the luminol showed "some reaction" to blood on the floor mat in the vehicle's front-passenger area and on some of the floor mats found in the vehicle's trunk.[3]

---

[3]Specifically, Curtiss testified to the following with respect to the luminol: "A different type of reagent known as "luminol" was applied. Luminol reacts to the chemical properties of blood and will glow in extreme, extreme low light levels. It—there has to be absolutely no light at all to be able to see the reaction."

Eva Sarabia, a manager at a Cash America Pawn store in San Antonio, testified that on February 28, 2007, Padilla pawned three pieces of jewelry. Ray Sanchez, the manager of First Cash Pawn in Corpus Christi, testified that Padilla came into his store to sell a bracelet. He identified a sales agreement, dated February 24, 2007, showing that Padilla sold the bracelet to First Cash Pawn. He stated that this transaction was recorded on videotape. Tomas Madrigal, the manager of Pronto Pawn in San Antonio, testified that Padilla pawned a gold rope chain in his store and also identified a sales agreement that Padilla had signed.

Roxanne Marez testified that she twice accompanied Padilla and Gonzales to San Antonio where Padilla pawned some jewelry. She explained that when she asked Padilla and Gonzales where the jewelry came from, they avoided answering the question.

## II. DISCUSSION

### A. Admission of Evidence

By his first issue, Padilla argues that the trial court erred by overruling his objections to statements made by Detective Garcia in the video-taped interview wherein Garcia challenged Padilla's version of the events by referring Padilla to Gonzales's contrary version of the events. At trial, Padilla objected to Detective Garcia's statements[4] on the

---

[4]At the time Padilla provided his video taped statement to the police, Padilla's defense counsel and Detective Garcia were present in the interview room. The videotape showed that after Padilla recounted how Gonzales had killed the victim, the following colloquy occurred between Detective Garcia and Padilla:

Garcia:   Would it surprise you at all that he [Gonzales] said from the chair [defense counsel's] in, he [Gonzales] said the same thing about you?

Padilla:   Excuse me?

Garcia:   Would it surprise you at all if Carlos [Gonzales] sat in the chair where [defense counsel] sat, possibly yesterday, and said the same thing about you?

Padilla:   No, it wouldn't surprise me. I mean, he's . . . I didn't even expect for him . . . When I first came into [defense counsel's] office I guess they said he had

4

grounds (1) that they were hearsay, and (2) that they violated Padilla's right of confrontation protected by the United States and Texas Constitutions. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).[5] Padilla asked that Garcia's statements be redacted from the video taped interview, but the State argued that the statements were not offered to prove the truth of the matter asserted; rather, they were offered to show Padilla's reaction to them, thus allowing the jury to judge his credibility. The trial court overruled the objections, and the entire videotape was played to the jury.

*1. Standard of Review*

When reviewing a trial court's ruling to admit or exclude evidence, we give great deference to the trial court's decision and will reverse the ruling only when the record shows that the trial court abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Further, we will uphold a trial court's ruling if it was correct under any theory of law applicable to the case. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). "Appellate courts will uphold a trial court's ruling on the admissibility of evidence 'as long as the trial court's ruling was at least within the zone of reasonable disagreement. . . .'" *Id.* (quoting *Montgomery*, 810 S.W.2d at 391).

---

made a statement against me. That shocked me already. 'Cause they said, "Do you think he'll make a statement against you?" And I was with my parents, and I said, "No, I don't think he would." Because we were close friends. I didn't expect him to do something like that to me, to turn his back on me after we helped each other so much. So, no, it wouldn't surprise me if he said something like that.

Garcia:          So it wouldn't surprise you at all?

Padilla:          Not at all. Not one bit.

[5]Article 1.05 of the code of criminal procedure provides, in relevant part: "In all criminal prosecutions the accused . . . shall be confronted with the witnesses against him . . . ." TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).

*A. Hearsay*

A statement not offered to prove the truth of the matter asserted is not hearsay. *Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000); *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App.–Dallas 1994, pet. ref'd). Additionally, statements offered only to show their effect on the listener are not hearsay. *In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 188-89 (Tex. 2007); *Young v. State*, 10 S.W.3d 705, 712 (Tex. App.–Texarkana 1999, pet. ref'd). Here, the State argued at trial that Detective Garcia's statements were not offered to prove the truth of the matter asserted but were offered to show Padilla's demeanor in response to the question. After the State played the videotape, the trial court instructed the jury, "Ladies and gentlemen, as far as the portion where the detective asked about Carlos Gonzales, that is not offered for the truth of the matter, just for the fact that it was asked and answered." We conclude that the statements were not hearsay because they were offered solely to show their effect on Padilla's demeanor, thus permitting the jury to evaluate his credibility. Accordingly, we hold that the trial court did not err by overruling the hearsay objection.

*B. Confrontation Clause*

Padilla also argues that the admission of these statements violated his Sixth Amendment right of confrontation. The Confrontation Clause of the Sixth Amendment to the United States Constitution bars the admission at trial of a testimonial out-of-court statement "unless the defendant has had a prior opportunity to examine the witness and the witness is unavailable to testify." *Del Carmen Hernandez v. State*, 273 S.W.3d 685,

6

687 (Tex. Crim. App. 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).[6]

Even when hearsay evidence is admissible under evidentiary rules, it may still violate the

Confrontation Clause if the accused is not afforded the opportunity to confront the out-of-

court declarant. *Shuffield v. State*, 189 S.W.3d 782, 790 (Tex. Crim. App. 2006).

However, the Confrontation Clause "does not bar the use of testimonial statements for

purposes other than establishing the truth of the matter asserted." *Del Carmen Hernandez*,

273 S.W.3d at 687 (citing *Crawford*, 541 U.S. at 59 n.9). Here, because the complained-of

statements were not offered for the truth of the matter asserted, we conclude that the

Confrontation Clause did not bar admission of these statements. Accordingly, we hold that

the trial court did not abuse its discretion by admitting the statements into evidence. Issue

one is overruled.

*B. Sufficiency of the Evidence*

By his second issue, Padilla challenges the legal and factual sufficiency of the

evidence to support his conviction as a principal or as an accomplice. In assessing the

legal sufficiency of the evidence to support a conviction, we consider all the evidence in the

light most favorable to the verdict and determine whether, based on that evidence and the

reasonable inferences therefrom, a rational juror could have found the essential elements

of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979);

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This assessment affords

appropriate deference "to the responsibility of the trier of fact fairly to resolve conflicts in

the testimony, to weigh the evidence, and to draw reasonable inferences from basic to

---

[6]The *Crawford* Court declined to spell out a comprehensive definition of "testimonial," but it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Because the complained-of statements were made by a co-defendant in response to police interrogation, this was testimonial hearsay.

7

ultimate facts." *Jackson*, 443 U.S. at 319. In reviewing the legal sufficiency of the evidence, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper,* 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Circumstantial evidence is as probative as direct evidence," and the cumulative force of the incriminating evidence may be sufficient to support a conviction. *Id*.

When assessing a factual insufficiency claim, we consider all of the evidence in a neutral light and ask whether the evidence introduced to support the verdict, is so weak as to render the verdict clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Although we review the evidence in a neutral light, we still "afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

A person commits capital murder if he or she commits murder as defined under section 19.02(b)(1) of the penal code and, *inter alia*, the person intentionally commits the murder in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008). A person commits murder if he or she "intentionally or knowingly causes the death of an individual." *Id*. § 19.02(b)(1) (Vernon 2003). A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, he or she intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly places another in fear of imminent bodily injury or death. *Id*. § 29.02(a). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id*. § 31.03 (Vernon Supp.

8

2008).  A person acts intentionally with respect to a result of his or her conduct when it is his or her conscious objective or desire to engage in the conduct or to cause the result. *Id*. § 6.03(a) (Vernon 2003).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  *Id*. § 7.01(a) (Vernon 2005).  A person is criminally responsible for an offense committed by the conduct of another if:  "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  *Id*. § 7.03(a)(2) (Vernon 2005).  "Each party to an offense may be charged with commission of the offense."  *Id*. § 7.01(b).

In his video taped statement, Padilla admitted that he was with Gonzales outside Morales's home immediately before the murder and that he was with Gonzales inside the home immediately after the murder.  While the presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant.  *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).  Padilla admitted in his video taped statement that he and Gonzales fled the crime scene together. While flight alone is not enough to support a verdict of guilt, evidence of flight from a crime scene is a circumstance from which an inference of guilt may be drawn.  *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *see Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (stating that a finding of intent may be inferred from evidence of flight from scene).  Gonzales stole a few hundred dollars and jewelry from the victim's house.  After the murder, he gave Padilla $80 and some of the stolen jewelry. Splitting the stolen proceeds is a circumstance tending to show guilt.  *Valdez*, 623 S.W.2d

at 321. Romero discovered that the dresser drawers in their bedroom had been opened and that jewelry had been taken. Shortly after the murder, Detective Garcia recovered some jewelry from pawn shops, and Romero identified the recovered jewelry as the jewelry stolen from the house on the day of the murder. Pawnshop employees identified Padilla as the person who pawned some of the stolen jewelry. Pawning a deceased's jewelry shortly after the deceased's murder is a circumstance of guilt. *See Youens v. State*, 742 S.W.2d 855, 859, 860 (Tex. App.–Beaumont 1987, pet. ref'd).

Other circumstances tending to prove Padilla's guilt are: (1) although Padilla did not know the victim, he knew that a piece of jewelry that Gonzales gave him after the murder came from the victim; (2) Marez twice accompanied Padilla and Gonzales to San Antonio where Padilla pawned some jewelry, and when she asked them where the jewelry came from, they "avoided" the question; (3) while in the murder victim's home, Padilla saw Gonzales go into a room and return with a little white plastic bag; (4) after the murder, Gonzales and Padilla disposed of Gonzales's bloody clothing as well as the "tire checker"; (5) both Gonzales and Padilla sold the jewelry; (6) Padilla helped the police recover the "tire checker" as well as some green gloves that Padilla said were involved; (7) Morales died from a skull fracture, which was consistent with being struck by a blunt object; and (8) luminol showed "some reaction" on the floor mat on the front-passenger side of the vehicle used in the murder; and in which Padilla was a passenger.

Controverting evidence showed that: (1) neither fingerprints nor DNA evidence linked either Padilla or Gonzales to the crime scene; (2) no eye witness saw either man commit the murder: (3) Padilla denied that he was involved in the murder and the robbery; (4) the medical examiner could not say how many persons hit Morales; (5) Padilla helped Gonzales pawn the jewelry because Gonzales did not have a driver's license; (6) Padilla

10

did not know that Gonzales was going to intentionally kill the victim; and (7) Padilla did not call the police because he was afraid of Gonzales.

Viewing this evidence under the appropriate standards, we conclude that the evidence is legally and factually sufficient to support the conviction. Issue two is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 20th day of August, 2009.